[S.F. No. 23925. Mar. 26, 1979.]

JIM D. GALLAMORE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
SAN RAMON GLASS COMPANY et al., Respondents.

COUNSEL

Maurice S. Marcus and Valerie M. Chapla for Petitioner.

Donald W. Haynes and Haynes & Olpin as Amici Curiae on behalf of Petitioner.

Charles L. Swezey, William B. Donohoe, Dexter W. Young, Mullen & Filippi and David V. Costa for Respondents.

OPINION

**RICHARDSON, J.**—We consider the proper computation of penalties in workers' compensation cases and, particularly, construe section 5814 of the Labor Code which provides for the assessment of a 10 percent penalty when payment of benefits has been unreasonably delayed or refused. In this case, petitioner (applicant) sought *three* separate penalties in the amount of $1,370 each, assessed against an award of permanent disability benefits in the total amount of $13,702.50. The Workers' Compensation Appeals Board (board) allowed a single $1,370 penalty. As we will explain, we have concluded that the penalty was properly imposed, that additional penalties may have been appropriate, and that the board should have the opportunity to reconsider the matter of the additional penalties in the light of the principles which we express herein.

Applicant was injured in an industrial accident on August 22, 1975. On August 27, 1975, respondent, employer's insurance carrier (carrier), advised applicant that temporary disability benefits would commence as of August 23, and soon thereafter such benefits, at the rate of $117 per week, were paid to applicant. Carrier did not inform applicant of his right to reimbursement for any transportation expenses related to necessary medical examinations.

Thereafter, during 1975 and early 1976, applicant incurred travel expenses in submitting to medical examinations by two physicians, and on January 30, 1976, applicant's attorney requested reimbursement to applicant of these expenses in the sum of $62.72. Carrier acknowledged the letter and requested itemization of the dates of the examinations. Applicant responded by filing a petition with the board on April 27, 1976, requesting assessment of the statutory 10 percent penalty against carrier for its failure to reimburse travel expenses "within a reasonable time after demand." The petition requested imposition of the penalty in addition to other benefits for temporary disability and further medical treatment incurred subsequent to February 19, 1976.

In June 1976, applicant submitted an itemized statement of claimed travel expenses, and carrier voluntarily paid the $62.72 claim approxi-

mately six weeks later prior to the hearing on applicant's petition for a penalty.

In August 1976, carrier notified applicant that it was terminating further temporary disability payments because applicant's condition had become permanent and stationary as of August 10. The notice further advised applicant that, by carrier's calculations subsequently proven incorrect, the previous payments included a four-day overpayment, related to the fact that applicant had attempted to work on four different occasions.

Despite the termination of temporary disability benefits, carrier did not immediately commence permanent disability payments. Applicant's attorney advised carrier in late August 1976 that such payments should be made "to avoid the possibility of a penalty." On September 13, 1976, applicant filed his second formal petition with the board, seeking "separate and distinct 10% penalties" for the separate delays (1) in failing to advance permanent disability benefits, and (2) in claiming the four-day overpayment credit without prior board authorization. Thus, as of September 1976, applicant had sought three separate 10 percent penalties pursuant to the two petitions then pending before the board.

Carrier answered the second petition on September 22 and made its first advance permanent disability payment to applicant on September 29, no formal petition for an award of such benefits having yet been filed. The payment reflected the claimed four-day credit for overpayment of temporary disability benefits. Later, carrier paid to applicant the approximately $66 deducted for the credit, because it learned that applicant was never paid for the four days on which he attempted to work.

Applicant's two petitions were consolidated and heard in March 1977. The parties stipulated to a permanent disability award rated at 42½ percent. The compensation judge, observing that applicant was entitled to temporary disability benefits which were already "fully compensated," awarded applicant permanent disability benefits in the amount of $13,702.50, and assessed a single 10 percent penalty on that sum, on the general ground that carrier "did unreasonably refuse to provide compensation benefits." The penalty was based solely upon carrier's six-week delay in advancing permanent disability payments.

Applicant sought reconsideration from the board, contending that two additional penalty assessments were appropriate. The board, in affirming

the judge's award of a single penalty, stated that although the assessment of "multiple penalties for successive delays in the factual context of this case" was "discretionary" no abuse thereof occurred by reason of the award of a single 10 percent penalty.

The board and the parties have requested us to clarify the effect of section 5814 in situations involving asserted successive, preaward delays in different types of benefit payments. The specific issues presented are: (1) Whether in the assessment of the 10 percent penalty preaward and postaward delinquencies are to be treated similarly; (2) whether penalties may be assessed for an unreasonable delay in paying allegedly "de minimis" amounts of benefits; (3) whether multiple 10 percent penalties may be assessed for successive preaward delays in the payment of compensation benefits; and (4) whether the penalty for a preaward delinquency affecting only a particular class of benefits owing the applicant must be assessed against the entire amount of the ultimate aggregate award, including benefits of types which have been promptly paid.

As will appear, we have concluded that if a particular delinquency is found unreasonable by the board, the assessment of a 10 percent penalty is mandatory under section 5814, whether or not the delinquency occurs prior to the issuance of a formal award or involves amounts seemingly "de minimis." We have further concluded that multiple penalties are mandatory for each separate delinquency, but that each penalty must be assessed only against the class of benefits which was actually delayed or refused.

We preface our discussion of the foregoing issues by noting that section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

1. *Preaward Penalties*

█ It is argued that the amount of the statutory penalty varies depending on whether the delinquency occurred before or after the

award. Section 5814, however, expressly mandates the imposition of a penalty for delinquencies occurring "either prior to or subsequent to the issuance of an award . . . ." Accordingly, it is now well established that if the carrier unreasonably delays in advancing compensation benefits prior to and in anticipation of an award, then the statutory penalty should be assessed. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]; *Berry* v. *Workmen's Comp. App. Bd.* (1969) 276 Cal.App.2d 381, 384 [81 Cal.Rptr. 65].) As we stated in *Kerley*, "The statute does not distinguish between the refusal to pay prior to and the refusal to pay subsequent to the award, and no persuasive reasons have been advanced why any such distinction should be made." (P. 227.)

Similarly, we see no reason why the *amount* of the penalty should vary depending on whether the delinquency occurred prior or subsequent to the award. It is true that until an award is entered or decision issued the precise amount of the penalty may be difficult to determine. (See, e.g., *Daniels* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 504, 506-507 [104 Cal.Rptr. 129] [delay in paying temporary disability benefits prior to award].) Yet upon the filing of a decision or award which specifies the base amount of benefits due (including amounts previously paid), the penalty can be readily computed in the manner which we hereinafter describe in section 4.

### 2. *Penalties for "de minimis" Delinquencies*

(2) Carrier urges that the board should have discretion to ignore minor, de minimis delinquencies in determining whether to assess a penalty. The language of section 5814, however, does not recognize any such exception and requires assessment of the penalty for *any* "unreasonable" delay (see *Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376, 384 [150 Cal.Rptr. 222]), and the cases have held that the penalty must be imposed without regard to the amount of benefits delayed or refused (*Tucker* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 330 [118 Cal.Rptr. 567] [interest payments on award delayed]; *Laucirica* v. *Workmen's Comp. Appeals Bd.* (1971) 17 Cal.App.3d 681, 684 [95 Cal.Rptr. 219] [same]). As the *Laucirica* court properly observed, "We recognize, of course, that a broad requirement of additional award upon every delay in payment of interest could work mischief and inequity. There may be an entirely reasonable excuse for delay. Normal or unavoidable delays in delivery of payment could allow time for accrual of minor sums of interest which would be but de minimis. *Such problems, however, may be met by the board in determining reasonableness of the*

*delay.* Addition of a penalty is expressly limited by section 5814 to payments which are 'unreasonably' delayed. The section expressly vests determination of this largely factual issue in the board." (P. 684, italics added.)

The seeming severity of the foregoing rule, requiring a 10 percent penalty for unreasonable delay in payments regardless of the amount involved, is mitigated by application of the further rule, discussed in section 4 hereof, that the penalty is to relate only to that class of benefits which were delayed or refused.

### 3. *Multiple Penalties for Successive Delays*

■ Carrier contends that the board lacks authority to impose multiple penalties for successive delinquencies in paying compensation benefits. We are unable to accept the argument, concluding that the specific language of section 5814, properly construed, requires the imposition of a separate penalty whenever compensation benefits have been unreasonably delayed or refused. This principle is not new. Thus in *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76], the carrier unreasonably delayed payment of an award of temporary disability benefits, and a 10 percent penalty was added to that award. Thereafter, the carrier committed further acts of delay in paying temporary disability and the applicant sought an additional penalty. We approve the conclusion of the *Davison* court that "The penalty is designed to secure timely payment of compensation, and if timely payment is not forthcoming *after a first penalty* a further penalty may run in order to cure the mischief. Were the threat of penalty limited to a single instance of delinquency, an employer or insurer who had unreasonably delayed payment of compensation and been assessed a 10 percent penalty could thereafter procrastinate indefinitely, subject only to the accrual of interest at the statutory rate . . . . For deterrent effect a penalty must have a prospective operation. We give the penalty section its intended deterrent effect and carry out the statute's basic policy of liberal construction by holding that successive delays in the payment of compensation may give rise to the imposition of successive penalties." (P. 18, italics added.)

Similarly, we agree with the condition of *Davison* that the additional penalties must be preceded by the imposition of "a first penalty" and follow a further unreasonable delay. Such a limitation upon the assessment of multiple penalties is appropriate to assure that the employer or carrier is not doubly penalized for what may be essentially a

single act of misconduct, and, further, to provide reasonable notice of the risk of imposition of multiple penalties. Where, however, the circumstances disclose separate and distinct acts of delay or nonpayment, and prior notice was given of the applicant's intent to seek separate or additional penalties for such acts, then multiple penalties are appropriate in a single penalty proceeding.

### 4. *Computation of Penalty*

■ Applicant has argued that each 10 percent penalty imposed under section 5814 must be assessed against the full amount of the award of all forms of compensation, including those portions which may contain other types of compensation benefits, payment of which was neither delayed nor refused. Our analysis of both the statutory language and the applicable authorities convinces us, however, that if, as in the usual case, an award is readily severable into the different classes or categories of compensation as defined in the Workers' Compensation Act (Lab. Code, § 3200 et seq.), then the penalty is to be assessed against only the amount awarded for the particular benefit of the kind delayed or refused.

■ It is settled that if the employer delays in furnishing *permanent* disability benefits awarded to the employee, the 10 percent penalty should be computed with reference to the *permanent* disability award only, but should not include any amounts of *temporary* disability previously awarded. (*Manning* v. *Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 655, 658-659 [89 Cal.Rptr. 76].) As expressed in *Manning,* section 5814 "is not a model of legislative draftsmenship. Nevertheless, we believe the words 'order, decision or award,' on the full amount of which the penalty must be applied, must be construed to mean the 'order, decision or award' with respect to which payment of compensation has been unreasonably delayed." (*Ibid.*)

We were presented with a converse situation in *Garcia* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 687 [100 Cal.Rptr. 149, 493 P.2d 877], wherein the applicant had sought to impose a penalty calculated on an award of permanent disability benefits because of a delay in paying temporary disability benefits under an earlier award. Relying on *Manning,* we observed that "[W]here there has been an award of temporary disability indemnity, and a subsequent award is made giving the applicant permanent disability indemnity, a delay with respect to making payment under one award for one type of benefit does not entitle the applicant to have the penalty applied to payments under the other award

for a different type of benefit where there has been no delay with respect to the latter payments." (P. 690, fn. omitted; accord *Ryerson Concrete Co. v. Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 685, 687-688 [110 Cal.Rptr. 319].)

The *Garcia-Manning* rationale was recently extended in *Daniels* v. *Workmen's Comp. Appeals Bd., supra,* 27 Cal.App.3d 504, to encompass a situation in which, as here, the delay in payments occurred prior to the entry of an award. In *Daniels,* the employer unreasonably delayed advancement of $764.33 in temporary disability payments during the preaward period. The award granted (1) further temporary disability benefits to a certain date, (2) permanent disability benefits thereafter, (3) reimbursement for self-procured medical treatment, (4) medical-legal costs, and (5) a 10 percent penalty based on the amount of temporary disability which was delayed, i.e., a penalty of $76.43. The applicant contended that the penalty should have been measured by the total amount of compensation awarded, including additional temporary disability benefits, permanent disability benefits, and medical-legal costs. The court disagreed, relying upon our *Garcia* decision, and stating that "If the unreasonable delay of payments made under an earlier award will not support a penalty based on a subsequent award [i.e., the situation in *Garcia*], a fortiori the unreasonable delay of payments never included within any award cannot support a penalty on an award covering a later period, which involved no unreasonable delay." (P. 507.)

Thereafter, in *State Comp. Ins. Fund* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 374 [110 Cal.Rptr. 757], the court followed *Daniels* and held that the penalty should be assessed only upon the preaward benefits which were delayed, rather than upon the permanent disability and collateral benefits subsequently awarded at the time the penalty was imposed.

The foregoing principle must be distinguished from that recently expressed by us in *Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226 [133 Cal.Rptr. 517, 555 P.2d 303]. In *Adams,* the board had awarded the applicant both temporary and permanent disability benefits, as well as medical-legal costs. Thereafter, the carrier unreasonably delayed in furnishing temporary disability benefits *and medical-legal costs,* and the applicant sought imposition of a penalty. The board imposed a penalty amounting to 10 percent of the delayed portion of the *temporary* disability benefits, but declined to apply the penalty to the award of permanent disability benefits or medical-legal costs. (See p. 229, fn. 2.) We annulled

the board's decision, but only insofar as it declined to apply the penalty to medical-legal costs. As we stated, "Read literally, section 5814 requires imposition of a 10 percent penalty on medical-legal costs in these circumstances. The section provides that the *'full amount* of the order, decision or award shall be increased by 10 percent' when compensation has been unreasonably delayed . . . . The *full* decision and award in the instant case ordered reimbursement of medical-legal costs, and payment of compensation under the award was unreasonably delayed. A literal application of section 5814 would accord with the constructional policy of liberally interpreting workers' compensation laws for the benefit of injured workers and with the policy of encouraging the employer and carrier to provide prompt medical treatment." (P. 230, italics in original.)

We stress that in *Adams* we did not suggest that the penalty should be applied to any benefits, such as the permanent disability award, which had not been delayed, despite the fact that such benefits arguably were part of the "full" award to which the penalty could apply. In *Adams* we were careful not to disapprove the *Manning, Garcia, Daniels* and *State Comp. Ins. Fund* line of cases which, as discussed above, developed the rule that the penalty should not be applied to those types of benefits which were neither delayed nor refused.

Any alternative construction of section 5814 would, in our view, lead to harsh and unfair results. To hold otherwise would mean that the size of the penalty would vary substantially depending on whether or not the delayed benefits (1) were contained in a separate award (see *Manning* and *Garcia*), in which case the timely paid benefits would not be included for purposes of penalty computation; or (2) were, as here, included in a single, aggregate award of all types of benefits payable, in which case the timely paid benefits would be included. Furthermore, where there are severable classes of benefits included in a single decision or award it is more fair and reasonable to assess penalties only upon the type of benefits, the payment of any part of which has been delayed, rather than to impose them as well upon benefits which have been promptly and entirely paid. . ▇ Consistent with *Garcia, Daniels,* and *State Comp. Ins. Fund,* we adopt the more moderate construction of the statutory language, holding that the phrase "full amount of the . . . award" in section 5814 refers to the full amount of the award for the particular class of benefit delayed or withheld. The penalty should not be assessed against other types of benefits despite their inclusion in a single decision or award containing multiple benefits. To the extent that *Sierra Pac.*

*Industries* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 413 [136 Cal.Rptr. 649], is contrary to the foregoing reasoning, it is disapproved.

■ Carrier argues that the penalty should be applied to the *net* amount of benefits remaining unpaid, thereby permitting credit to the employer or carrier for amounts previously paid without delay on the specific benefit awarded. (See *Adams* v. *Workers' Comp. Appeals Bd., supra,* 18 Cal.3d 226, 229, fn. 2; *State Comp. Ins. Fund* v. *Workmen's Comp. Appeals Bd., supra,* 35 Cal.App.3d 374, 376.) The statutory language, referring to the "full" amount of an award makes no provision for credit for any partial payments made under compulsion of an award. (See *Ramsey* v. *Workmen's Comp. App. Bd.* (1969) 2 Cal.App.3d 693, 698 [83 Cal.Rptr. 51].) Thus, if any part of a specific benefit has been delayed or withheld, the penalty is imposed against the entirety of that benefit.

### 5. *Summary*

As we have explained, (1) both preaward and postaward delinquencies are equally subject to the 10 percent penalty, (2) the penalty is mandatory despite the arguably de minimis nature of the amounts involved, (3) multiple penalties must be assessed for successive delays so long as separate and distinct acts of misconduct are involved, and (4) the penalty is to be computed by assessing 10 percent of the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld.

■ Applying the foregoing principles to the present case, we note that the board awarded only a single penalty for carrier's unreasonable delay in commencing permanent disability payments, measured by the total amount awarded for those benefits. Applicant alleged, however, that carrier committed an additional act of misconduct in obtaining an unauthorized credit for asserted overpayments in temporary disability payments, which credit resulted in a reduction of the permanent disability benefits which were ultimately paid. The board should consider the question whether this credit constituted a separate act of misconduct resulting in additional unreasonable delay in furnishing compensation benefits. If so, a second penalty would be appropriate as indicated above. Additionally, applicant asserted that carrier unreasonably delayed in reimbursing his travel expenses, a further act of misconduct which, if proved, would justify another 10 percent penalty, applied to the total amount of travel expenses for which reimbursement was proper. We

express no opinion on the question whether carrier's alleged acts were unreasonable within the meaning of section 5814.

In penalty cases the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties.

The decision of the Workers' Compensation Appeals Board is annulled and the cause is remanded to the board for further proceedings consistent with the views expressed herein. The parties shall bear their own costs.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.