[No. E002660. Fourth Dist., Div. Two. Nov. 10, 1986.]

WALTER G. SMITH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
VICTORVILLE-BARSTOW TRUCK LINES et al., Respondents.

COUNSEL

Toohey & Traw, Thomas J. Toohey, Banks, Leviton & Dross and Merle C. Rabine for Petitioner.

Chernow & Lieb and Alan Steinhardt for Respondents.

OPINION

**KAUFMAN, J.**—Petitioner Walter G. Smith (the applicant) seeks review of an order of the Workers' Compensation Appeals Board (WCAB or Board) denying his request for a 10 percent penalty against Zenith Insurance Company (Zenith) for unreasonable delay in making payment under an approved compromise and release. (Lab. Code, § 5814.)

We conclude the Board's order finding there was no unreasonable delay is fully supported by the evidence. Accordingly, we affirm.

*Facts*

The essential facts were stipulated by the parties at the time of the hearing and are taken largely from the minutes of hearing to which neither party has taken exception. The applicant filed three separate applications: in 83 SBR 97031 he alleged industrial injury to his neck on or about January 1983; in 83 SBR 97032 he alleged industrial injury to his back and left leg on July 12, 1983; and in 83 SBR 97033 he alleged a continuous trauma industrial injury to his back and neck from July 12, 1982 to July 12, 1983.

On or about August 24, 1984, by telephone the parties negotiated a compromise and release covering all three cases. It is now agreed that the amount of the settlement was to be $24,750. However, Zenith's representative O. D. Richardson represented at the hearing it was his understanding that the case could be settled for $23,750 and that his notes, dated August 24, 1984, at 2:40 p.m. show "'Accepted by Tom Toohey' [applicant's attorney]. and 'shows original figures and shows Compromise & Release, $20,000.00 plus $3,750.00, which is $23,750.00.'"

Consistent with Mr. Richardson's understanding and notes a compromise and release for $23,750 was forwarded by Zenith to applicant's attorney on September 14, 1984. The proposed compromise and release was returned by applicant's attorney to Zenith on or about October 23, 1984, with an indication the amount was in error and should be changed to $24,750. This change was made and on or about November 12, 1984, the compromise and release, as corrected, was submitted to the Board for approval. An order approving the compromise and release was issued November 14, 1984.

Upon receipt of the order approving the settlement, an employee of Zenith "instead of paying pursuant to the Order, paid pursuant to the original Compromise & Release, which [had been] prepared by [Zenith's] representative and payment was made on November 19, 1984, except that the payment was $1,000.00 short of that which was ordered."

Nothing further occurred until January 16, 1985, at which time the applicant first notified his attorney that he had been shorted $1,000. The applicant's attorney then made a demand on defendants to pay the additional $1,000, but according to the statement of facts in the applicant's petition for review it was not until January 23, 1985, that the applicant's attorney notified Zenith's representative of the shortage, whereupon he was told that the representative would consult the claims department.

On February 1, 1985, a clerical employee of Zenith wrote a memorandum to O. D. Richardson which read: "'Please review. Compromise & Release you drew up was for $23,750.00. Approval came in $24,750.00. Please advise which is correct.'"

On February 6, 1985, applicant's attorney filed a "Declaration of Readiness," in effect requesting adjustment of the matter. After review of the Board's file on February 7, 1985, Mr. Richardson instructed Zenith to make immediate payment. On February 14, 1985, Zenith paid the remaining $1,000.

The workers' compensation judge (WCJ) who conducted the hearing subsequently issued an order based on his "Opinion on Decision" which read as follows: "Finding is made that payment of sums pursuant to Order Approving Compromise and Release issued on November 14, 1984 was not unreasonably delayed. [¶] Nevertheless defendant insurance carrier has agreed to pay applicant the sum of $500.00 for his inconvenience and it is ordered that defendant pay applicant that sum less $150.00 attorneys fee. In the event that applicant files a Petition for Reconsideration this order will be automatically vacated."

Applicant filed a petition for reconsideration which was denied by a two to one decision of the Board for the reasons stated in the report of the WCJ which the Board adopted.

The report of the WCJ read in pertinent part: "In the opinion of the Workers' Compensation Judge, there were extenuating circumstances which made the delay in payment of the $1,000.00 not unreasonable. There was a misunderstanding to begin with as to the total amount of the Compromise and Release and defendant's representative prepared a settlement in the sum of $23,750.00, which he sent to applicant's attorney but which was returned by applicant's attorney indicating that the settlement should be changed to $24,750.00. A new document was prepared and submitted. An Order was issued accordingly. Upon receiving the Order, defendant's employees in error paid pursuant to the original Compromise and Release, in the sum of $23,750.00, which document was apparently still in the defendant's file. Applicant did not notify his attorney (or the defendants) that the payment was $1,000.00 short until January, 1985. At that time on January 23, 1985 applicant's attorney made a demand for payment. On February 1, 1985 defendant's employee asked defendant's representative to review the matter, indicating that the Compromise and Release drawn for $23,750.00 and that approval came in for $24,750.00. A Declaration of Readiness was filed on February 7 [sic], 1985. Defendant's representative, apparently on February 7, 1985, reviewed the Appeals Board file, after which he instructed his firm to make immediate payment, which was made on February 14, 1985. [¶] The delay was indirectly caused by an apparent misunderstanding as to the amount of the settlement between applicant's attorney and defendant's representative and it would hardly seem fair to award applicant the sum of $2,475.00 for the inadvertent delay."

*Contentions and Discussion*

■ Relying on *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223 [93 Cal.Rptr. 192, 481 P.2d 200] and *Jensen* v. *Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 244 [216 Cal.Rptr. 33], applicant urges on review, as he did before the Board, that the only satisfactory excuse for delay in payment of disability benefits is genuine doubt from a medical or legal standpoint as to liability for benefits; that a delay in paying benefits cannot be justified by inadvertence; that the delay here from notification of the underpayment on January 23, 1985, to the date the remaining $1,000 was paid on February 14, 1985, a total of 22 days, "was deliberate, and in defiance of the Order Approving Compromise and Release's explicit provision. [Zenith] could have taken a Petition [for reconsideration], as it was aware of these questions. It chose not to do so and it should pay the penalty on the entire amount of the Compromise and Release." Applicant is wrong

on the law and, worse, mischaracterizes the facts as found by the WCJ and the Board.

Turning first to the law, it is of course correct that in *Kerley* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 223, 230, it was stated in relevant part: "[T]he only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits . . . ." However, that statement was made in the context of a case in which a request for advance payments against permanent disability benefits had been denied because the precise percentage of permanent disability had not yet been adjudicated. In reversing an order denying a 10 percent penalty the California Supreme Court pointed out "[T]he plain fact is that in the case before us there is absolutely no evidence on which a finding of reasonable doubt [as to liability for permanent disability benefits] can be supported." (*Id.,* at p. 229, fn. omitted.)

Here, although Zenith asserts, perhaps correctly, that it entertained a genuine doubt as to its legal liability for the extra $1,000, the WCJ and the Board did not find on that issue. They found the delay in payment was attributable indirectly to a misunderstanding between the parties as to the correct amount of the compromise and release and, otherwise, to normal administrative processing. They simply found the delay asserted by applicant, from January 23 to February 14, 1985, not an unreasonable delay.

Applicant contends *Jensen* v. *Workers' Comp. Appeals Bd., supra,* 170 Cal.App.3d 244, stands for the proposition that a delay of 22 days cannot be justified on that basis. Applicant is mistaken as to the law and to the extent the *Jensen* decision stands for that proposition it is simply wrong.

The precedent most closely resembling the case at bench is *Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376 [150 Cal.Rptr. 222]. In *Kampner* there was a 26-day delay in making payment after an order approving a compromise and release. The delay was caused in part by the fact the payment was originally mailed to a wrong address and in part by normal processing time. In upholding the WCAB's order denying a 10 percent penalty, the *Kampner* court quoted with approval portions of the Board's opinion in pertinent part as follows:

"'. . . There is no question on this record that defendant did not act promptly. However under the statute there must be something more than this—there must be an unreasonable delay.

"'In this case we are not satisfied that the delay in payment was unreasonable. It is inevitable that delays of a few days will occur at the points

at which responsibility for different functions must be passed along. This becomes unreasonable only when the delays are excessive. It is also inevitable that in a large scale organization, the press of other business will mean that a matter will not be acted on immediately upon receipt. Here also delays become "unreasonable" for purposes of Labor Code Section 5814 only when they are excessive. The record before us however contains no substantial evidence that the delays here were excessive in relation to what delays would have occurred in the normal course of business. Nor is there any basis for us to conclude even without such evidence, that the delays here were excessive. . . .

"'. . . . In this case then the Board is required to determine whether the delay here was egregious in the light of the legitimate needs of administering workers' compensation insurance. Measured by this criterion, the evidence as described above, fails to establish a delay of sufficient duration to be described as unreasonable.'

". . . '[Labor Code section 5814] on its face contemplates that a certain amount of discretion lies with the Board in determining whether a delay is or is not reasonable. The statute implies that the Board is to consider the totality of the circumstances. This belies the contention that there exists a fixed point at which a delay is *per se* unreasonable. Thus, under certain circumstances a 26 day delay may be within the realm of reasonableness while under other circumstances it may be unreasonable.

"'. . . . . . . . . . . . . . . . . . . . . . . .

"'We do not understand *Kerley* v. *WCAB* 4 C.3d 223, 93 CR 192, 36 CCC 152 to hold that the Board is precluded from determining whether the length of a delay was unreasonable. . . . The Court in *Kerley* discussed the justification for the penalty in terms of uncontradicted medical evidence warranting an advance of some permanent disability. The Court, however, did not discuss the issue of what guidelines the Board is to use in determining whether a delay is in fact excessive, presumably because in *Kerley* there could be no question that the more than 6 month delay in failing to furnish benefits was unreasonable under any conceivable standard by which a reasonable time is to be measured. Thus, it is clear that in *Kerley,* the Court did not have before it a situation in which the Board determined that a delay was not excessive in length; rather the case deals with a situation in which no reasonable ground was given as justification for a clearly excessive delay. Thus, the case is inapposite to the situation presently before the Board.

"'. . . . . . . . . . . . . . . . . . . . . . . .

"'The opinion [in *Kerley*] then is phrased in terms of what is the permissible justification for a delay. This language in no way suggests that the Board does not have discretion to determine the threshold question of whether there has been a "delay." Since the Board then must preliminarily determine whether a "delay" occurred, it must have some standard by which to measure "delays" to determine whether such delays are "unreasonable."

"'. . . . . . . . . . . . . . . . . . . . . . . . .

"'. . . . The Board has repeatedly refused to apply penalties where it has found the delay not to have been unreasonable under all the circumstances. See e.g., *Wendelton* v. *WCAB*, 42 CCC 986 (writ denied; Hearing denied); *Kombrink* v. *WCAB* 41 CCC 580 (1976) (writ denied, Hearing denied); *Holloway* v. *WCAB* 41 CCC 448 (1976) (writ denied); *Adams* v. *WCAB* 37 CCC 674 (1972) (writ denied); *Hancock* v. *WCAB* 37 CCC 518 (1972) (writ denied, Hearing denied); *Belt* v. *WCAB* 36 CCC 466 (1971) (writ denied); *Manning* v. *WCAB* 36 CCC 203 (1971) (writ denied).'" (*Kampner, supra,* 86 Cal.App.3d at pp. 380-382.)

The majority of the *Jensen* court severely criticized the decision in *Kampner,* concluding it "simply cannot be reconciled with the explicit holding in *Kerley* that 'the *only* satisfactory excuse' for delay is genuine doubt as to medical or legal liability" and "is also in conflict with both the public policy embodied in [Labor Code] section 5814 . . . and the rule of construction favoring injured workers codified in [Labor Code] section 3202." (*Jensen* v. *Workers' Comp. Appeals Bd., supra,* 170 Cal.App.3d 244, 248.)

It is the *Jensen* decision, however, that has misread *Kerley,* not the *Kampner* decision. What the majority of the panel in *Jensen* apparently failed to notice was that in a decision subsequent to *Kerley* the California Supreme Court cited the *Kampner* decision and expressly agreed with its rationale. In *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 822-823 [153 Cal.Rptr. 590, 591 P.2d 1242], six years before issuance of the *Jensen* decision, the California Supreme Court stated: "As the *Laucirica* court [*Laucirica* v. *Workmen's Comp. Appeals Bd.* (1971) 17 Cal.App.3d 681, 684 (95 Cal.Rptr. 219)] properly observed, 'We recognize, of course, that a broad requirement of additional award upon every delay in payment of interest could work mischief and inequity. There may be an entirely reasonable excuse for delay. Normal or unavoidable delays in delivery of payment could allow time for accrual of minor sums of interest which would be but de minimis. *Such problems, however, may be met by the board in determining reasonableness of the delay.* Addition of a penalty is expressly limited by section 5814 to payments which are "unreasonably"

delayed. The section expressly vests determination of this largely factual issue in the board.'"[1] (Italics those of the Supreme Court.)

We conclude there is ample evidence in the record to support the Board's decision in this case that the insurance carrier's 22-day delay in paying the extra $1,000 after being notified of the shortage was not unreasonable and that the Board's decision is itself entirely reasonable. As the Board found, the whole underpayment problem derived from a misunderstanding between the parties as to the amount of the settlement in the first instance. Zenith paid what it believed to be the correct amount ($23,750) exceedingly promptly, only five days after the date of the order approving the compromise and release. We note from the record that Zenith had also advanced moneys to the applicant against permanent disability benefits. These were hardly the actions of an insurer bent on delaying payment. Although the applicant received his portion of the original payment of $23,750 shortly after November 19, 1984, he did not notify his attorney of the shortage until January 16, 1985, almost two months later. Applicant's attorney took from January 16 to January 23, 1985, to notify Zenith of the problem.

We conclude the Board acted well within its discretion in determining as a matter of fact that Zenith's delay to February 14 in paying the additional $1,000 did not under the circumstances constitute an unreasonable delay mandating a 10 percent penalty under Labor Code section 5814.

*Disposition*

Affirmed.

McDaniel, J., concurred.

**RICKLES, Acting P. J.**—I respectfully dissent from the majority's characterization that Zenith's delay in paying the additional $1,000 was not unreasonable.

The undisputed facts indicate there was originally some confusion as to whether the compromise and release was for $23,750 or $24,750. This discrepancy was apparently clarified by Zenith's hearing representative because he submitted the compromise and release specifying the sum of $24,750 on November 12, 1984.

---

[1]Labor Code section 5814 provides in relevant part: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. *The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts.*" (Italics added.)

Two days later, the Board issued an order approving the compromise and release specifying the settlement sum as $24,750. Zenith was served with a copy of the order.

Because Zenith's claim representative had not corrected the claims department file, the claims department promptly paid the compromise and release contained in their file in the sum of $23,750 on November 19, 1984.

"The discrepancy in the Compromise and Release contained in the file, and Order approving Compromise and Release, was noted by the Claims Department, and the record stated: 'C & R papers indicate total gross amount of settlement was $23,750.00. Order does not reflect this. Pay per C & R papers and refer file to O.D. Richardson to have Judge issue an amended Order.' This memorandum was dated 11/19/84. [¶] As stated, defendant has no record of the Compromise and Release, as allegedly amended, being returned to its office for signature." (Defendant's answer to applicant's petition for reconsideration filed by O. D. Richardson, defendant's hearing representative.)

The record on appeal is devoid of any action taken by Zenith to check the Board's file or do anything concerning this discrepancy. Smith, at this point, had been shorted $1,000. Nothing further occurred until January 1985.

On January 16, 1985, Smith contacted his attorney advising him he had been short-changed $1,000. On January 23, Smith's attorney advised Zenith's hearing representative Smith had been shorted $1,000 and demanded payment. Smith's attorney was advised the representative would contact the claims department.

On February 1, 1985, a clerical employee of Zenith's wrote a memorandum to O. D. Richardson,[1] which read: "Please review. Compromise and release you drew up was for $23,700. Approval came in $24,750. Please advise which is correct." Richardson reviewed the Board's file on February 7, 1985, and instructed Zenith to make immediate payment. On February 14, 1985, Zenith paid the remaining $1,000.

The workers' compensation judge found that the payment of sums pursuant to the order of November 14, 1985, was not unreasonably delayed. The workers' compensation judge found there were extenuating circumstances because of the misunderstanding as to the amount of the compromise and release.

---

[1]O. D. Richardson was the same hearing representative previously referred to in the memorandum of November 19, 1984.

## I

The evidence is uncontradicted that Zenith's records demonstrate it had failed to pay Smith the $1,000 from November 19, 1984, to February 14, 1985. This information was before the workers' compensation judge and the board.[2]

I am aware our "review is confined to the question of whether, under applicable principles of law, the award of the appeals board is supported by substantial evidence. (*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) The application of section 5814[3] has been the subject of a number of appellate decisions. A review of those cases clearly reveals that, although denominated a 'penalty,' the section is to be interpreted liberally, in accordance with the general purpose of the workmen's compensation laws. (E.g., *Langer* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 400 [65 Cal.Rptr. 598]; *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15 [50 Cal.Rptr. 76]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 210 Cal.App.2d 267 [26 Cal.Rptr. 470] (hg. den.).)" (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 226-227; fn. omitted [93 Cal.Rptr. 192, 481 P.2d 200].)

"Section 5814 is explicit and clear. It requires that '[w]hen payment of compensation has been unreasonably delayed . . . the full amount of the order, decision or award shall be increased by 10 percent.' . . . 'The penalty . . . is designed to help an employee obtain promptly the cure or relief he is entitled to under the law, and to compel his employer to provide this cure or relief in timely fashion.' (*Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76].)" (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303].)

It is obvious that section 5814 is designed to protect employees', not employers', rights and to encourage employers to make prompt payment by making delay costly. (*Jardine* v. *Workers' Comp. Appeals Bd.* (1984) 163 Cal.App.3d 1, 8 [209 Cal.Rptr. 139]; *Jensen* v. *Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 244, 247 [216 Cal.Rptr. 33].)

"[T]he only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and that the burden is on the

---

[2]The 22-day delay adopted by the majority occurs as a result of the complaint of Smith's attorney that the original delay was compounded by the additional 22 days of delay of payment after notification.

[3]Unless otherwise indicated, all section references in this opinion are to the Labor Code.

employer or his carrier to present substantial evidence on which a finding of such doubt may be based." (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200]; *Jensen* v. *Workers' Comp. Appeals Bd., supra,* 170 Cal.App.3d 244, 247; *Johnson* v. *Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 770, 774 [210 Cal.Rptr. 28]; *Bekins Moving & Storage Co.* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 675, 680 [163 Cal.Rptr. 213].)

In the case at bench, the record is clear that $1,000 was due Smith on the date of the order of November 14, 1984, until payment was made on February 14, 1985. Zenith has presented no evidence as to a genuine doubt regarding medical or legal liability. The majority and Zenith attempt to justify Zenith's failure to pay because of inadvertence and mistake, relying on *Kampner* v. *Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376 [150 Cal.Rptr. 222].

Their reliance on *Kampner* is misplaced. *Kampner* did not modify *Kerley* as to either the grounds for imposition of the penalty or impose the burden of proof on the applicant. *Kampner* allows the Board to determine preliminarily whether a delay occurred and secondarily to measure delays to determine whether such delays are unreasonable. *Kampner* does not indicate that every inadvertent delay does not justify penalty. It was an attempt by the courts to discourage applicants from filing requests for penalties occasioned by every de minimis administrative delay. *Kampner* is not our case.

Zenith is betrayed by the evidence it presented at the hearing. Had Zenith promptly investigated the discrepancy between the order approving the compromise and release and the one contained in their file, this matter would not have appeared before this court. Zenith's evidence indicated if a prompt investigation had been undertaken as was done in February, payment could have been made in two weeks. There is no evidence justifying the delay in making such an investigation from November 14, 1984, until February 1, 1985.

Accordingly, I would annul the Board's order with directions to enter a new award providing for the 10 percent penalty pursuant to section 5814.

Petitioner's application for review by the Supreme Court was denied February 19, 1987. Racanelli, J.,* and Anderson, J.,* participated therein. Mosk, J., was of the opinion that the application should be granted.

---

*Assigned by the Chairperson of the Judicial Council.