[No. B147387. Second Dist., Div. Six. Oct. 3, 2001.]

COUNTY OF SAN LUIS OBISPO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and RUSSELL
BARNES, Respondents.

**COUNSEL**

Finnegan, Marks & Hampton, Ellen Sims Langille and Renee M. Bertenthal for Petitioner.

Rockard J. Delgadillo, City Attorney, Garrett A. Kuehn, Assistant City Attorney, and William W. Koepcke, Deputy City Attorney, for City of Los Angeles as Amicus Curiae on behalf of Petitioner.

William A. Herreras for Respondent Russell Barnes.

Berkowitz & Cohen, Elliot S. Berkowitz; Van Bourg, Weinberg, Roger & Rosenfeld, Ellyn Moscowitz and John Plotz for California Applicants Attorneys' Association as Amicus Curiae on behalf of Respondent Russell Barnes.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**COFFEE, J.**—Petitioner County of San Luis Obispo (County) seeks review of an order of the Workers' Compensation Appeals Board (WCAB) awarding respondent Russell Barnes a 10 percent penalty under Labor Code section 5814[1] on all medical benefits, past, present and future, for a single instance of delay in paying a previously assessed penalty of $97.87. The County has been paying medical benefits to Barnes for more than 25 years and continues to do so. At the time this petition was filed, the County had paid medical expenses on Barnes's behalf exceeding $650,000. The County contends that a penalty in excess of $65,000 for an inadvertent delay in paying a $97.87 penalty constitutes harsh and unfair treatment not intended by the Workers' Compensation Act. We agree and shall reverse.

### FACTS

Barnes was injured in 1973 while working for the County. In 1981, the WCAB awarded him 100 percent permanent disability and future medical care.

In 1991, Barnes sought multiple penalties for the County's alleged delays in providing and paying for certain medical benefits in the previous 10 years. The WCAB awarded Barnes a single 10 percent penalty under section 5814[2] on all medical benefits, past, present and future. The parties "informally" agreed that a penalty check would issue at the end of each quarter after medical expenses paid in the previous quarter were calculated. Nothing in the record indicates that the parties' agreement contained a time limit for paying the quarterly penalties.

In 1997, Barnes filed a petition for multiple penalties for alleged unreasonable delays in paying benefits from 1991 to 1997, including a delay in paying the penalty for the quarter ending April 30, 1995, in the amount of $97.87. The check was issued timely on May 11, 1995, but was not sent to Barnes until July 15, 1995. Barnes did not notify the County that he would seek a penalty for delay in receiving the May 11 check until he filed the petition for penalty in 1997.

---

[1] All statutory references are to the Labor Code unless otherwise stated.

[2] Section 5814 states: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

At the penalty hearing, the County's claims adjuster described the process used in making the quarterly penalty payments. The day after each quarter ended, the medical expenses paid by the County in that quarter on Barnes's behalf were calculated in the regional office in Fresno and sent to Chicago for errors and omissions review. After review, the Chicago office issued a penalty check for 10 percent of the medical costs paid in that quarter and sent it to the adjuster in Fresno. The adjuster then forwarded the check to Barnes with a cover letter. The adjuster testified she usually received the penalty checks from Chicago in about three weeks and mailed them to Barnes shortly after receiving them. She could not explain why the May 11 check did not reach her for mailing to Barnes until July 15, 1995, rather than in the usual three weeks. The adjuster mailed the May 11 check to Barnes on July 15, 1995, as soon as she received it from Chicago.

The WCAB's initial award of three section 5814 penalties was annulled by the Supreme Court and remanded to the WCAB for reconsideration in light of two of its recent decisions, *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1209 [77 Cal.Rptr.2d 528, 959 P.2d 1204] (*Stuart*) and *Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165 [77 Cal.Rptr.2d 552, 959 P.2d 1228].

On remand, the workers' compensation judge (WCJ) awarded Barnes one section 5814 penalty for delay in making the $97.87 penalty payment. The WCAB issued its own opinion affirming the decision, with one commissioner dissenting. Both the WCJ and WCAB discussed *Stuart* and *Avalon Bay Foods* but concluded that a penalty assessment was required because the County did not meet its burden of showing that the delay was reasonable.

In this petition, the County argues that the WCAB erred because it did not make a specific finding of intentional delay, it did not apply the "fair balance" test required by *Stuart*, and a penalty in this case would be an excessive fine in violation of the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution. It also argues that it is immune from a Labor Code section 5814 penalty assessment under Government Code section 818.

Barnes contends that the WCAB correctly imposed the penalty because the County did not meet its burden of explaining the delay and that a penalty is required for unreasonable delay in paying even de minimis sums.

The California Applicants Attorneys' Association filed an amicus curiae brief on Barnes's behalf and the City of Los Angeles filed an amicus curiae brief on behalf of the County.

## DISCUSSION

"'In considering a petition for writ of review of a decision of the WCAB, this court's authority is limited. This court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. . . .'" (*Mote v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 902, 909 [65 Cal.Rptr.2d 806].)

Whether a delay is unreasonable is usually a question of fact, and the court is required to give deference to the WCAB's finding on the issue. (*Kampner v. Workers' Comp. Appeals Bd.* (1978) 86 Cal.App.3d 376 [150 Cal.Rptr. 222].) However, "'[t]his court is not bound to accept the Board's factual findings where they are unreasonable and do not withstand scrutiny when viewed in the light of the entire record, or where on a case-by-case examination we discern an inequitable result when the entire record is examined for fairness, reasonableness, and proportionality in the overall scheme of the workers' compensation law and the purposes sought to be accomplished by that law.'" (*Chu v. Workers' Comp. Appeals Bd.* (1996) 49 Cal.App.4th 1176, 1182 [57 Cal.Rptr.2d 221]; see also *Henry v. Workers' Comp. Appeals Bd.* (1998) 68 Cal.App.4th 981, 985 [80 Cal.Rptr.2d 631] [same].)

The burden is on the employer to establish that a delay is reasonable. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) Assessment of a section 5814 penalty is mandatory if a finding of unreasonable delay is made (E.g., *Mote v. Workers' Comp. Appeals Bd., supra,* 56 Cal.App.4th at p. 911.)

"The purpose of the section 5814 penalty is twofold. First, the statute provides an incentive to employers and insurance carriers to pay benefits promptly by making delays costly. [Citations.] A second and '"equally important purpose"' is '"to encourage timely payments of compensation to working people to promptly ameliorate economic hardship [resulting from] the interruption of their employment and concomitant loss of income."'" (*Stuart, supra,* 18 Cal.4th at p. 1214.)

In *Stuart,* the Supreme Court stated that the totality of the circumstances should be considered in determining whether a delay is unreasonable, including such things as the size of the late payment, the length of the delay, and the defendant's history of payment. The Supreme Court noted that it has repeatedly interpreted section 5814 as requiring a balancing of the interests of the employee and employer. "When penalties are assessed in the workers'

compensation setting, we have cautioned that 'the board should proceed with a view toward achieving a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or [insurance] carrier of harsh and unreasonable penalties.' (*Gallamore* [v. *Workers' Comp. Appeals Bd.* (1979)] 23 Cal.3d [815,] 828 [153 Cal.Rptr. 590, 591 P.2d 1242].) We have since reiterated this position. (*Christian* v. *Workers' Comp. Appeals Bd.* (1997) 15 Cal.4th 505, 517 [63 Cal.Rptr.2d 336, 936 P.2d 115]; *Rhiner* v. *Workers' Comp. Appeals Bd.* [(1993)] 4 Cal.4th [1213,] 1230 [18 Cal.Rptr.2d 129, 848 P.2d 244].)" (*Stuart, supra,* 18 Cal.4th at p. 1215.)

The *Stuart* court held that a one-week delay in paying temporary disability was not unreasonable, stating, "in any endeavor in which humans are involved, mistakes are made. A reasonably short delay attributable to human error cannot, standing alone, be considered unreasonable. In requiring a finding of unreasonableness as the trigger for a section 5814 penalty, our Legislature intended something beyond the mere existence of any delay in the payment of benefits. . . . [¶] Were there substantial evidence in the record showing that SCIF had a history of improperly processing benefits payments, or that SCIF failed to provide a sufficient number of adjusters to handle the caseload or otherwise configured its office or business practices in such a way that errors were likely or probable, we would have a different case. Here, however, all the record demonstrates is a solitary instance of human error, which was quickly corrected upon discovery." (*Stuart, supra,* 18 Cal.4th at pp. 1216-1217.)

In *County of Sacramento* v. *Workers' Comp. Appeals Bd.* (1999) 69 Cal.App.4th 726 [81 Cal.Rptr.2d 780] (*Souza*), the appellate court applied the fair balance test and found the WCAB erred in assessing a section 5814 penalty for an eight-day delay in paying death benefits resulting from a clerical error. The *Souza* court reasoned: "Determination of whether a given delay is unreasonable does not depend solely on the number of days payment was delayed but on the totality of the circumstances presented. (*Kampner* v. *Workers' Comp. Appeals Bd.*[, *supra*], 86 Cal.App.3d 376, 382, 383 . . . .) The reason for the employer's action or inaction plays an important role. As stated in *Gallamore* v. *Workers' Comp. Appeals Bd.*[, *supra*], 23 Cal.3d 815, 822-823 . . . : " '[A] broad requirement of additional award upon every delay in payment of interest could work mischief and inequity. There may be an entirely reasonable excuse for delay. Normal or unavoidable delays in delivery of payment could allow time for accrual of minor sums of interest which would be but de minimis. *Such problems, however, may be met by the board in determining reasonableness of the delay.* . . .' " [Citation.] [¶] In

*Gallamore*, the court admonished the Board to strike 'a fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties.' (23 Cal.3d at p. 828.) In *Rhiner v. Workers' Comp. Appeals Bd.*[, *supra*], 4 Cal.4th 1213, 1225 . . . , the court explained this statement in *Gallamore* 'pertains to the [Board]'s authority to decide whether a penalty should be assessed at all, not to the calculation of the penalty.' In other words, the Board must balance the interests of the parties in assessing whether a delay was unreasonable." (*Id.* at p. 731, original italics.)

■ Guided by these principles, we review the totality of circumstances and apply the "fair balance" test to determine whether the delay in this case was unreasonable.

The WCAB awarded the penalty because the County could not explain the delay. However, the mere existence of a delay does not support assessment of a penalty. (*Stuart, supra*, 18 Cal.4th at p. 1216.) Uncontradicted evidence in the record gives rise to the inference that the delay was inadvertent. The claims adjuster testified that she was not aware of any delay until July 15, 1995, when the check arrived from Chicago. She also testified that, as soon as she received the check, she mailed it to Barnes. These are not the actions of an employer "bent on delaying payment." (*Smith v. Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 1451, 1458 [231 Cal.Rptr. 364].) Moreover, at the time the penalty check was issued, the County had been paying Barnes's medical expenses for more than 25 years and making quarterly penalty payments without complaint from Barnes for approximately four years. Certainly, the County would not intentionally delay paying the sum of $97.87 and risk the possibility of liability for a penalty in excess of $40,000.[3] (See *Barns v. Workers' Comp. Appeals Bd.* (1989) 216 Cal.App.3d 524, 530 [266 Cal.Rptr. 503] [WCAB must accept as true the intended meaning of unimpeached and uncontradicted evidence].)

Several other factors are relevant to our inquiry. (See *Souza, supra*, 69 Cal.App.4th at p. 733 ["[T]he nature of the inadvertence must be considered in light of the magnitude of the delay, as well as all other relevant factors, in determining whether the delay was unreasonable"].) As soon as the County became aware that the check was not sent to Barnes, it mailed the check to him. (*Id.* at pp. 730, 733 [prompt corrective action is relevant in determining whether delay unreasonable].)

In addition, the parties' 1991 agreement did not contain a timetable for payment, and the record indicates the penalty checks were not mailed to

---

[3]At the time of the delay, the County had paid in excess of $390,000 in medical benefits on Barnes's behalf.

Barnes on any particular date but were mailed anywhere from four to five weeks after each quarter ended. (See *Kampner v. Workers' Comp. Appeals Bd., supra,* 86 Cal.App.3d at p. 383 [26-day delay in paying compromise and release was not unreasonable in part because agreement contained no payment date and no statute required payment be made within a specified number of days after approval].)

In *Avalon Bay Foods v. Workers' Comp. Appeals Bd., supra,* 18 Cal.4th at pages 1179-1180, the Supreme Court held that the 60-day time limit in section 4603.2[4] applies to payment of medical transportation expenses because such expenses are an aspect of the broader class of medical treatment. As the penalty here relates to medical treatment and such penalties become "part and parcel of the original compensation award" (*Anderson v. Workers' Comp. Appeals Bd.* (1981) 116 Cal.App.3d 954, 960 [172 Cal.Rptr. 398]), it is a reasonable extension of *Avalon Bay Foods* to apply section 4603.2 to the quarterly penalty payments. Thus, the County had at least until June 30, 1995, to issue the penalty check for the quarter ending April 30, 1995.

Unintentional delays for periods longer than 15 days have been found reasonable in a number of cases with somewhat similar circumstances. In *Kampner v. Workers' Comp. Appeals Bd., supra,* 86 Cal.App.3d 376, for example, the court found a 26-day delay under the circumstances not unreasonable. Similarly, in *Smith v. Workers' Comp. Appeals Bd., supra,* 186 Cal.App.3d at page 1458, the appellate court concluded a 22-day delay was not unreasonable under the circumstances. Following the approach of *Kampner,* the majority looked at the circumstances surrounding the delay, including the prompt payment of the initial amount and the lack of diligence of the employee in bringing the underpayment to the employer's attention, and concluded 22 days was not unreasonable.

Another relevant factor is that there is no history of improper processing of benefit payments or evidence of institutional neglect such as repeated

---

[4]Section 4603.2, former subdivision (b), as amended in 1990, stated in relevant part: "Payment for medical treatment provided or authorized by the treating physician shall be made by the employer within 60 days after receipt of each separate, itemized billing, together with any required reports. Any properly documented amount not paid within the 60-day period shall be increased by 10 percent, together with interest at the same rate as judgments in civil actions retroactive to the date of receipt of the bill, unless the employer does both of the following: [¶] (1) Pays the uncontested amount within the 60-day period. [¶] (2) Advises . . . the reasons for contesting these items, and the remedies available . . . . [¶] If an employer contests all or part of a billing, any amount determined payable by the appeals board shall carry interest from the date the amount was due until it is paid. [¶] An employer's liability to a physician or another provider under this section for delayed payments shall not affect its liability to an employee under Section 5814 or any other provision of this division." (§ 4603.2, former subd. (b), added by Stats. 1990, ch. 770, § 3, pp. 3470-3471.)

mistakes involving this or other employees or inadequate personnel or training. As in *Stuart,* "all the record demonstrates is a solitary instance of human error, which was quickly corrected upon discovery." (*Stuart, supra,* 18 Cal.4th at p. 1217.)

In addition, Barnes contributed to the delay by failing to notify his employer that the check had not arrived within the usual four to five weeks. ██ ██ ██ Failure of the employee to give notice of delayed receipt of a benefit payment is relevant in determining reasonableness of the delay. (See, e.g., *Souza, supra,* 69 Cal.App.4th at p. 732 [employee contributed to delay in receiving payment of death benefit by not taking prompt action on receipt of erroneous check]; see also *Smith v. Workers' Comp. Appeals Bd., supra,* 186 Cal.App.3d at p. 1458 [employee's delay in notifying employer of error in award payment considered in determining reasonableness of delay]; and see *Gleason v. Workers' Comp. Appeals Bd.* (2000) 65 Cal.Comp.Cases 579 [two-month delay paying interest on compromise and release not unreasonable where defendant's first notice that interest was not included was receipt of applicant's petition for penalties, and defendant promptly paid interest due].)[5]

██ Finally, we consider the size of the late payment in relation to the amount of the potential penalty in fulfilling our duty to examine the entire record for " 'fairness, reasonableness, and proportionality in the overall scheme of the workers' compensation law and the purposes sought to be accomplished by that law.' " (*Chu v. Workers' Comp. Appeals Bd., supra,* 49 Cal.App.4th at p. 1182; *Henry v. Workers' Comp. Appeals Bd., supra,* 68 Cal.App.4th at p. 985; see also *State of California v. Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128, 139-140 [51 Cal.Rptr.2d 606] [WCAB can consider size of a delinquency to determine whether the employer acted unreasonably].) In this case, it cannot be disputed that the potential penalty is grossly disproportionate to the amount delayed. The delay did not involve furnishing or paying for medical treatment; therefore, imposing such a grossly disproportionate penalty for an inadvertent delay would not serve the purposes of section 5814. Instead, imposition of a penalty here would upset the balance of fairness and result in a windfall to the applicant out of

---

[5]Decisions of the WCAB reported in California Compensation Cases are citable as authority, although they are not binding on this court. (*Wings West Airlines v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 1047, 1053, fn. 4 [232 Cal.Rptr. 343].) This is consistent with " 'the well-established principle that contemporaneous administrative construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized.' " (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1995) 37 Cal.App.4th 675, 683 [43 Cal.Rptr.2d 660].)

proportion to the employer's conduct and impose upon the County a harsh and unreasonable penalty.

Because we conclude that the WCAB erred in finding the delay was unreasonable and assessing a penalty, we do not reach the constitutional issues raised by the County and amicus curiae or engage in construction of other statutory schemes as urged by the County.

The order of the Board denying reconsideration is annulled. The matter is remanded with directions to grant reconsideration and deny Barnes's petition for penalty.

Yegan, Acting P. J., and Perren, J., concurred.