[Civ. No. 57027. Second Dist., Div. Four. Mar. 17, 1980.]

COUNTY OF LOS ANGELES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and MARY
KING, Respondents.

934

COUNSEL

John H. Larson, County Counsel, Milton J. Litvin and Daniel E. McCoy, Deputy County Counsel, for Petitioner.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Geffner & Satzman and Michael A. Ozurovich for Respondents.

OPINION

FILES, P. J.—Petitioner County of Los Angeles contends that respondent Workers' Compensation Appeals Board erred in assessing a 10 percent penalty against county pursuant to Labor Code[1] section 5814 for its discontinuance of permanent disability payments to respondent injured worker, Mary King. We hold that the board correctly decided that county should not have terminated payments to King prior to the board's order reducing the permanent disability award, but we annul the penalty in this case as, under the circumstances, county did not act unreasonably.

---

[1]All statutory references in this opinion will be to the Labor Code.

I. *Procedural history.*

On November 19, 1973, while employed as a vocational nurse by county, King sustained an injury to her right eye. She was initially awarded a 4 percent permanent disability rating ($840), but her petition to reopen for "new and further disability" resulted in a finding that the eye injury had resulted in a depressive neurosis. In a decision filed January 16, 1976, her permanent disability was rated as a "moderate neurosis," a 50 percent standard rating, which was adjusted for King's age and occupation to 61 percent permanent disability. Based upon her earnings this rating entitled her to 318 weekly payments at $70 per week, totaling $22,260.

County began payments under the new award and also provided medical care by referring King to Michael J. Singer, M.D., a psychiatrist.

Dr. Singer, in his report of April 20, 1976, indicated that King's psychiatric condition had improved. In a supplemental report dated July 7, 1976, Dr. Singer opined that King's psychiatric impairment was then "very slight," which is a 10 standard rating and would adjust to 15 percent permanent disability for age and occupation, yielding benefits totaling $3,517.50. Dr. Singer reiterated this opinion in his report of August 2, 1977.

On September 3, 1977, county filed a petition to reduce the permanent disability award on the ground that King's permanent disability had lessened.[2] At the time that petition was filed, county had already paid King $12,650 as permanent disability indemnity for the period through September 15, 1977, and $3,192.69 in a lump sum, for a total of $15,842.69, which is approximately equivalent to a 47 1/2 percent disability rating. At the same time county ceased all permanent disability payments to King.

---

[2]Section 5803 provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards made and entered under the provisions of this division. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any such order, decision, or award, good cause appearing therefor.

"Such power includes the right to review, grant or regrant, diminish, increase or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor such award was made has either recurred, increased, diminished, or terminated."

King objected to the reduction in her award and asked that a 10 percent penalty be imposed upon the county pursuant to section 5814.[3] She also requested that the matter not be set at that time as she had a petition for writ of review pending on another issue in the case.

A hearing was held on April 13, 1978. Dr. Singer submitted a new report advising that King's disability had now worsened and was in the range of "slight to moderate." The findings of the judge, based upon that report, resulted in a permanent disability standard rating of 35 percent, which adjusted for King's age and occupation to 45 1/2 percent, calling for benefits totaling $14,962.50, i.e., less than the county had already paid. The judge denied King's request for a 10 percent penalty.

King then sought reconsideration by the board, contending that substantial evidence did not support the reduction of her permanent disability award and that a penalty should have been assessed.

On June 25, 1979, the board made its findings and award on reconsideration, finding the permanent disability rated 45 1/2 percent, awarding medical-legal costs, and imposing a penalty of 10 percent of the permanent disability indemnity.

This is the decision which is the subject of review here.

The board stated in its opinion: "It was neither lawful nor reasonable of [County] to unilaterally withhold the payment of permanent disability indemnity due in accordance with the January 16, 1976 award in the absence of an order modifying or rescinding that award. [County] could not have a reasonable doubt as to its liability for permanent disability indemnity as long as the January 16, 1976 award was in effect. [County's] remedy was to petition to modify or rescind that award, not to cease payment of permanent disability indemnity prior to Board action altering the award. Accordingly, a penalty of 10% of the permanent disability indemnity awarded will be assessed against [County] pursuant to Labor Code section 5814."

---

[3]Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

## II. *Issue.*

■ The sole issue before this court is whether the section 5814 penalty should have been assessed against it. We must first determine whether it was proper for county to cease making payments when it filed its motion to modify the award upon credible medical evidence that the disability did not justify further payment.

## III. *Discontinuance of payments.*

■ As legal authority for a unilateral cessation of payments, county relies upon section 10462 of the Workers' Compensation Appeals Board Rules of Practice and Procedure, (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2) which provides: "A petition to terminate liability for continuing disability payments or other compensation benefits under a findings and award, decision or order of the Appeals Board or referee must be filed within ten (10) days of the termination of disability payments or the furnishing of other compensation benefits."

County argues that implicit in that section is authorization for the employer to terminate permanent disability payments upon filing a petition to reduce the award.

The board's position is that historically section 10462 has been considered as pertaining only to a continuing award of temporary disability indemnity. The board points out that the two succeeding sections, numbered 10464 and 10466, by their terms, pertain only to petitions to terminate temporary disability, and that there are no comparable rules for petitions to terminate permanent disability.

This argument based upon proximity carries little weight. At the time county discontinued payments the rule in question was the fourth section under the heading "petitions." The first three sections under that heading clearly are not limited to the subject of temporary disability.

A sound basis for the board's interpretation of the rule is found in the conceptual and functional differences between temporary disability and permanent disability indemnity. In general, temporary disability indemnity is payable during the worker's healing period, until the worker has recovered sufficiently to return to work or until the worker's condition reaches a permanent and stationary status. Temporary disability thus

serves as wage replacement during that period. It is anticipated that eventually the injury will become permanent and stationary or the worker will return to his job whereupon the payment for temporary disability will cease. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) §§ 13.01, 13.02.) In many instances, the employer will then commence payments of permanent disability benefits. (§ 4650.)

■ Permanent disability refers to the impairment of function which remains after maximum recovery from the effects of the injury has been attained. The indemnity is a form of compensation for the residual handicap. (See 2 Hanna, *supra*, § 14.01.) An award of permanent disability, unlike that of temporary disability, specifies the amount to be paid, subject only to modification by the board upon a proper showing. (§§ 5410, 5803, 5804.)

■ As the board correctly points out, section 5803 authorizes modification of a prior award only "after an opportunity to be heard is given to the parties in interest." During the five-year period after the injury, the board's continuing jurisdiction does not nullify the res judicata effect of its decision. The board's decision is final until reopened. (See 1 Hanna, *supra*, § 3.08 [1].)

Thus, unilateral termination of temporary disability indemnity, for good cause, may be consistent with the statutory system; but unilateral termination of permanent disability compensation frustrates the expectation of the injured worker and conflicts with the concept of an award which is definite in amount, based upon a finding which is intended as res judicata.

County points out that the record here illustrates the dilemma faced by an employer who is legally entitled to a reduction of the award. The observations made by Dr. Singer in 1976 and 1977 were compelling evidence that the original award had been much too generous, and that the claimant had already received more than she would be entitled to after modification. The county was aware that once the money is paid out, restitution is a virtual impossibility. (See *Reyes* v. *Los Angeles Brick Co.* (1966) 32 Cal.Comp.Cases 122; 1 Hanna, *supra*, § 9.04 [1] [c].) Modification of an award by board action is not necessarily a speedy remedy—as is illustrated by the delay in this case between the county's petition and the order reducing the amount of the award.

The county also points out that an employer ceases payment at its peril. If the board ultimately declines to reduce the award, the employer may be required to pay, in addition to the disability award, interest, a 10 percent penalty under section 5814 and the claimant's attorney fees under section 5410.1. Thus, the county argues, if the employer's right to stop payments unilaterally is recognized, it is not likely to be abused.

On the other hand, if the employer unilaterally stops the weekly payments, the deprivation of anticipated income may impose an immediate hardship upon the claimant which cannot be fully rectified by later payment of the amount due plus interest, a penalty and attorneys fees. We may reasonably assume that the recipients of disability benefits, like others who receive weekly or monthly payments, live in anticipation of the next paycheck. Giving due consideration to the legislative declaration that the provisions of the compensation law "shall be liberally construed by the courts for the purpose of extending their benefits for the protection of persons injured in the course of their employment" (§ 3202), and the qualified res judicata effect given to permanent disability awards, we must conclude that the board has correctly interpreted rule 10462 as inapplicable to permanent disability.

## IV. *Penalty.*

We must next consider whether the record supports the imposition of a penalty upon the ground that "payment of compensation has been unreasonably delayed or refused" within the meaning of section 5814. (Fn. 3, *ante.*)

In *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 230 [93 Cal.Rptr. 192, 481 P.2d 200], the court said: "In summary, we hold that the only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and that the burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based."

In *Argonaut Ins. Co.* v. *Industrial Acc. Com. (Marlar)* (1962) 210 Cal.App.2d 267 [26 Cal.Rptr. 470], a penalty was upheld where the employer's insurance carrier reduced payments because of a mistaken interpretation of the law. In that case, however, the carrier's action was based upon an erroneous interpretation of statutory and case law to the

contrary. Here, in contrast, the rules promulgated by the board give no indication that section 10462 is applicable only to temporary disability. The interpretation assumed by the county is invited by the introductory language "A petition to terminate liability for continuing disability payments or other compensation benefits under findings and award...."

In *Mauro v. Barron-Gray Co.* (1948) 14 Cal.Comp.Cases 93, where the employer had unilaterally terminated temporary disability payments upon medical advice that the applicant was able to work, the board declined to impose a penalty. There is no case law, either from the courts or the board, as to whether the same procedure may be employed to terminate permanent disability payments. The standard California texts on worker's compensation do not discuss the issue. Finally, although the fact is not dispositive, it is a fact that the county had paid the worker substantially more than the amount ultimately awarded. Under all the circumstances known to county in September 1977 its interpretation of the law was not unreasonable. Nor can it properly be said that the termination of payments at that time was unreasonable within the meaning of section 5814.

That portion of the board's order of June 25, 1979, which imposes a penalty of 10 percent is annulled and the matter is remanded to the board.

Kingsley, J., and Jefferson (Bernard), J.,* concurred.

A petition for a rehearing was denied April 2, 1980, and petitioner's application for a hearing by the Supreme Court was denied May 14, 1980.

---

*Assigned by the Chairperson of the Judicial Council.