[No. S055638. May 12, 1997.]

KAY CHRISTIAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, MORRIS, POLICH
& PURDY et al., Respondents.

## COUNSEL

Elliot S. Berkowitz for Petitioner.

David Bryan Leonard, William A. Herreras and John Messer as Amici Curiae on behalf of Petitioner.

Krimen, Klein, DaSilva, Daneri & Bloom, Krimen, DaSilva, Daneri, Bloom & Landsiedel and Louis Harris for Respondents.

De Witt W. Clinton, County Counsel (Los Angeles), Louis V. Aguilar, Assistant County Counsel, Dixon M. Holston, Deputy County Counsel, Bennett M. Lieber, Christine A. Lieber, Finnegan, Marks & Hampton, Michael A. Marks, Ellen Sims Langille, Dyana M. Lechuga, Laughlin, Falbo, Levy & Moresi, Michael W. Laughlin, Josephine F. Mariani, Horvitz & Levy, Sandra J. Smith and Christina J. Imre as Amici Curiae on behalf of Respondents.

## OPINION

**BAXTER, J.**—When a workers' compensation insurer erroneously and unreasonably concludes that an injured worker is no longer entitled to payment of indemnity for temporary total disability (TTD) and discontinues those payments, does Labor Code section 5814[1] permit the Workers' Compensation Appeals Board (the Board) to impose a separate penalty of 10 percent of the total award for each pre-award payment that should have been paid? In this case the Board determined that a single penalty was authorized. The Court of Appeal disagreed, and ordered the Board to reinstate an award by a workers' compensation judge (WCJ) which included penalties for each payment that was not made.

We conclude, consistent with *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815 [153 Cal.Rptr. 590, 591 P.2d 1242] (*Gallamore*), that section 5814 permits multiple penalties for delay or nonpayment of pre-award TTD benefits only when the unreasonable delay or refusal of those benefits is attributable to separate and distinct acts by an employer or insurance carrier. TTD benefits were terminated by a single act of the insurance carrier in this case. The insurance carrier's conclusion that plaintiff Kay Christian was no longer entitled to TTD benefits and termination of those benefits does not become a separate and distinct act supporting an additional penalty each time a benefit check should have been paid thereafter. That Christian may have given the insurance carrier more than one notice that penalties would be sought for each biweekly payment is irrelevant. The unreasonable act, terminating benefit payments, had already occurred.

For that reason we shall reverse the judgment of the Court of Appeal.

I

### *Background*

Kay Christian, a law firm employee, sustained injury to her psyche and internal system arising out of and in the course of her employment and was temporarily totally disabled from February 3, 1993, the date of the injury,

---

[1]All undesignated statutory references are to the Labor Code. Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

through the date on which a WCJ awarded the penalties that are the subject of this dispute. State Compensation Insurance Fund (SCIF) was her employer's workers' compensation insurance carrier on the date of the injury.

SCIF paid TTD benefits to Christian until May 23, 1994, at which time, based on reports from doctors other than petitioner's treating physician, it discontinued TTD indemnity payments and began making permanent disability advances.[2] The WCJ ruled that the medical legal reports on which SCIF relied for its assertion that TTD payments were no longer required were inadmissible, leaving no evidentiary basis for SCIF's action, and concluded, based on the reports of Christian's treating physicians, that her condition was not permanent and stationary.

On that basis the WCJ concluded that termination of TTD benefits by SCIF was unreasonable, Christian was entitled to those benefits at a rate of $336 per week and was also entitled to a penalty of 10 percent, "cumulative," for each TTD payment due after June 16, 1994. The WCJ directed that each of the penalties be applied to the full amount of the award for the class of compensation, temporary disability, without deduction of pre-award payments.

SCIF sought reconsideration by the Board on the grounds that the award was in excess of the power of the Board, the evidence did not justify the findings of fact, and the findings of fact did not support the award. It argued that the award was an abuse and misuse of the penalty provisions of section 5814. As of the date of the petition for reconsideration, 11 penalties were due under the award. SCIF took the position that only one penalty was permissible because there had been only one stoppage of TTD payments, that which occurred on May 24, 1994.[3]

The Board granted reconsideration and amended the decision of the WCJ to impose a single section 5814 penalty against all TTD indemnity benefits payable by SCIF. The Board found no error in the determination that SCIF did not have a reasonable basis for terminating TTD payments. Therefore, the imposition of a penalty was warranted. However, the Board found no justification for the assessment of multiple penalties for "that single act of

---

[2]Contrary to Christian's assertion that SCIF presented no evidence with regard to their reasons for discontinuing TTD, the record supports the finding of the WCJ that it did so based on the inadmissible medical reports of the two physicians who examined her at its request. Since SCIF commenced permanent disability advances, we may reasonably infer that SCIF believed Christian's condition had become permanent and stationary.

[3]SCIF also argued that its conduct did not justify any penalty for unreasonable delay or nonpayment of benefits, an issue that is not before us.

misconduct."[4] In so doing the Board relied primarily on *Gallamore* and *Jardine* v. *Workers' Comp. Appeals Bd.* (1984) 163 Cal.App.3d 1 [209 Cal.Rptr. 139] (*Jardine*). It distinguished cases in which separate and distinct acts of misconduct by a carrier justified multiple penalties.[5]

Christian's petition seeking review of the Board's decision was granted by the Court of Appeal, which disagreed with the Board's conclusion that multiple penalties were not authorized by section 5814, annulled the Board's decision, and directed reinstatement of the findings and award of the WCJ.

Recognizing that the workers' compensation laws (§ 3200 et seq.) are to be liberally construed to protect injured workers (§ 3202), the Court of Appeal followed *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15 [50 Cal.Rptr. 76] (*Davison*), a delayed payment case, which it read as permitting a penalty for each delayed TTD payment, even though the second delay in *Davison* was a delay in furnishing medical treatment which occurred after an initial penalty had been assessed for a prior delay in furnishing medical treatment. Improper termination of TTD benefits was not in issue in *Davison*. The Court of Appeal noted that this court had cited *Davison* with approval in *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200], and, in *Gallamore, supra,* 23 Cal.3d at pages 827 and 824, had stated that "multiple penalties must be assessed for successive delays so long as separate and distinct acts of misconduct are involved" and that if "the circumstances disclose separate and distinct acts of delay or nonpayment, and prior notice was given of the applicant's intent to seek separate or additional penalties for such acts, then multiple penalties are appropriate in a single penalty proceeding." The Court of Appeal also relied on language in *Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1226, footnote 7 [18 Cal.Rptr.2d 129, 848 P.2d 244] (*Rhiner*), to the effect that "successive delinquencies require the imposition of multiple penalties."

The court rejected the reasoning of *Jardine, supra,* 163 Cal.App.3d 1, which held that an insurer's unreasonable termination of payment for permanent total disability, and payment of indemnity for only partial disability, justified only a single penalty for the several lower payments made prior to

[4]The terms "misconduct" and "act of misconduct" are not used in section 5814. Our decisions have used them as a shorthand reference to delinquencies and other conduct which the Board found had been unreasonable and thus supported imposition of a penalty under section 5814. (See, e.g., *Gallamore, supra,* 23 Cal.3d 815, 827.)

[5]Reconsideration of that decision also was granted, after which the Board reaffirmed its original decision and rejected Christian's additional claim that multiple penalties should have been awarded under section 4650, which mandates payment for temporary disability not later than 14 days after knowledge of the injury unless liability has been denied and provides for penalties if any payment is not timely. That claim had not been properly raised.

the date a hearing was set. It concluded instead that both the statute and case law made it clear that the Board is required to impose a separate penalty for each refused or delayed payment.

SCIF and Christian's employer (collectively SCIF) claim not only that the Court of Appeal erred in its construction and application of section 5814, but also that the court's holding permits imposition of penalties that are arbitrary, excessive, unreasonable, and confiscatory. As such, SCIF argues, the penalties in this case are an unconstitutional denial of due process.[6]

II

*Discussion*

We need not address the constitutional claim as we conclude that the WCJ and the Court of Appeal did not properly apply the prior decisions of this court construing section 5814 to the pre-award TTD benefits in issue here. Those decisions do not support imposition of multiple penalties for SCIF's single unreasonable act which terminated pre-award TTD benefits in this case.

That the Legislature did not intend to authorize multiple penalties on facts like these is suggested both by the language of section 5814 and by its legislative history. This penalty section was added in 1945. (Stats. 1945, ch. 802, § 2, p. 1497.) At that time, the Legislature simultaneously amended section 5811 to remove a provision for interest on delayed payments. (*Id.*, § 1, p. 1497.)[7] The interest provision of section 5811 had read: "Where payments of compensation have been unreasonably delayed, the commission may allow the beneficiary thereof interest thereon, at not to exceed one and one-half per cent per month during such period of delay." (Stats. 1937, ch. 90, p. 302, adding Lab. Code, § 5811.) Notably, the Legislature did not use language similar to that in former section 5811 which had expressly directed that each payment was to be increased. Instead, in section 5814 the Legislature made the penalty mandatory whenever refusal of or delay on payment of benefits is unreasonable, and provided only for an increase in the award

---

[6]In lieu of filing new briefs in this court, SCIF has elected to rely on its answer to the petition for writ of review filed in the Court of Appeal and its petition for rehearing. Christian has elected to rely on her petition for writ of review and answer to the SCIF petition for review in this court. (See Cal. Rules of Court, rule 29.3(a).)

[7]The request of amicus curiae County of Los Angeles that we take judicial notice of this history is granted. (See Evid. Code, § 451.) The request that we take judicial notice of a contemporary report of the passage of this legislation appearing in the March 25, 1948, Labor Clarion is denied. It does not appear that this matter was judicially noticed by the Court of Appeal or that it is relevant to determining the legislative intent underlying section 5814. (See Evid. Code, § 459.)

itself without distinction between delay or refusal of benefits. That suggests that the Legislature did not intend that multiple penalties would be awarded in all cases for each payment missed after benefits are improperly terminated or for each delayed payment. We see no reason why the Legislature would mandate separate penalties for every missed or delayed TTD payment, but only a single penalty for an outright refusal of benefits.[8]

While we have held that multiple penalties must be applied in some circumstances, those penalties have been approved only when the refusal of, or delay in payment of benefits necessarily involved separate and distinct unreasonable acts by the insurance carrier. Those multiple penalties involved separate classes of benefits, individual claims for payment or reimbursement of medical or travel expenses, or a repeated refusal or delay in payment of a benefit after the same conduct had already been found by the Board to be unreasonable and a prior penalty imposed, or some analogous, legally significant event such as a stipulation of liability by the carrier had intervened between the first act for which a penalty was imposed and the second.

We most recently visited the question of penalty awards under section 5814 in *Rhiner, supra,* 4 Cal.4th 1213, but our decision in *Gallamore, supra,* 23 Cal.3d 815, more extensively examined the question. *Rhiner* must be understood in context as an application of *Gallamore.*

In *Gallamore,* the insurance carrier had engaged in separate acts which had been found to be unreasonable. First, before the permanent disability award had been made and the worker's applications for penalties heard, there had been a six-week delay in payment of permanent disability benefits after termination of temporary disability benefits. Second, a credit for a claimed overpayment of TTD had been improperly taken against permanent disability benefits. Third, transportation benefits had not been promptly paid. The worker sought three penalties, one for each distinct act by the carrier. The Board had affirmed the WCJ's award of a single penalty of 10 percent of the permanent disability award.

We annulled the award and remanded the matter to the Board. We first rejected the insurance carrier's argument that, in computing the amount of the penalty, a distinction should be made between acts occurring prior to an award of benefits and those occurring subsequently. Because section 5814 expressly mandates a penalty for delinquencies "either prior to or subsequent to the issuance of an award," we held that the amount of the penalty did not

---

[8]As amicus curiae County of Los Angeles notes, were section 5814 construed as mandating a penalty for each delayed pre-award payment or refused payment, the number of penalties would depend on when the Board heard the matter.

vary with the time of the act. Once an award is made specifying the amount of benefits, the penalty is to be computed on the basis of the award for that class of benefits in which the act later found by the Board to have been unreasonable occurred. (*Gallamore, supra,* 23 Cal.3d at pp. 822, 827-828.)

We then held that if a delay in payment is unreasonable, a penalty is mandatory. This is true regardless of the amount of the benefit delayed or refused. There is no exception for what the carrier might deem a "de minimis" delinquency. (*Gallamore, supra,* 23 Cal.3d at pp. 822-823.)

Finally we addressed the question of multiple penalties for "successive delays" and it is this term which may have been misunderstood by the WCJ and the Court of Appeal. As will appear, in *Gallamore* there was no application for penalties for delay in making "successive" payments of the same benefit. The delays were "successive" only in that the failures to pay transportation benefits, the delay in payment for permanent disability, and taking the improper credit each occurred at a separate time. It was in that context that we discussed successive delays and successive delinquencies. The insurance carrier argued that the Board lacked authority to impose a penalty for each category of delinquency. We disagreed.

While the *Gallamore* analysis was directed to the question of multiple penalties for misconduct in the handling of different types of benefit payments, the court's reasoning and the authorities on which we relied are instructive here. We rejected the insurance carrier's argument that a single penalty was authorized, but did so in the context of an application for penalties for separate and distinct acts that delayed payment of, or the proper amount of, different benefits. In that context we held that section 5814 "requires the imposition of a separate penalty whenever compensation benefits have been unreasonably delayed or refused." (*Gallamore, supra,* 23 Cal.3d at p. 823.) Notably, the employee did not seek and we did not authorize separate penalties for each temporary disability payment omitted after the insurance carrier terminated those benefits or for each permanent disability payment that was delayed. We noted, with regard to the latter, that a single penalty had been awarded for the delay, but directed only that the Board consider whether taking the unauthorized credit against permanent disability benefits "constituted a separate act of misconduct resulting in additional unreasonable delay in furnishing compensation. If so, a second penalty would be appropriate." (*Gallamore, supra,* 23 Cal.3d at p. 827.) There was no suggestion that each delayed payment might constitute a separate act of misconduct.

Instead, *Gallamore* emphasized that multiple penalties are permitted only when delay or nonpayment of benefits is attributable to separate and distinct

acts. "Where . . . the circumstances disclose separate and distinct acts of delay or nonpayment, and prior notice was given of the applicant's intent to seek separate or additional penalties for such acts, then multiple penalties are appropriate in a single penalty proceeding." (*Gallamore, supra*, 23 Cal.3d at p. 824.) Contrary to Christian's argument, this statement was not a holding that a single act of terminating benefits might become the basis for multiple penalties simply because the insurance carrier is given multiple notices that penalties will be sought for each payment missed subsequent to the act of terminating the payments.

For the proposition that multiple penalties are authorized we cited with approval the decision of the Court of Appeal in *Davison, supra*, 241 Cal.App.2d 15, a case in which only delays in furnishing medical benefits were in issue. In *Davison*, a 10 percent penalty had been awarded in October 1964 for delay in furnishing medical benefits, but when the worker sought another penalty for a subsequent delay six months later the Industrial Accident Commission (predecessor of the Board) concluded that section 5814 authorized only a single penalty. The Court of Appeal disagreed, reasoning that if only a single penalty were permitted the employer "could thereafter procrastinate indefinitely, subject only to the accrual of interest at the statutory rate." (241 Cal.App.2d at p. 18.)

Therefore, the *Davison* court concluded, a construction that would fulfill the remedial purpose of the workers' compensation law was appropriate notwithstanding its penal aspect since the penalty is designed to ensure prompt payment. (See *Kerley* v. *Workmen's Comp. App. Bd., supra*, 4 Cal.3d at p. 227.) For that reason and in circumstances in which a legally significant event—a penalty award by the Board—had intervened since the first act of misconduct, the court stated: "We give the penalty section its intended deterrent effect and carry out the statute's basic policy of liberal construction by holding that successive delays in the payment of compensation may give rise to the imposition of successive penalties." (*Davison, supra*, 241 Cal.App.2d at p. 18.)

When this court cited *Davison* with approval in *Gallamore*, we reasoned that, where there were no separate and distinct acts to which delays in payment of benefits were attributable, limiting multiple penalties to situations in which the second penalty was for conduct that followed the imposition of a prior penalty was "appropriate to assure that the employer or carrier is not doubly penalized for what may be essentially a single act of misconduct, and, further to provide reasonable notice of the risk of imposition of multiple penalties." (*Gallamore, supra*, 23 Cal.3d at pp. 823-824.) This followed our observation that: "[I]n *Davison* v. *Industrial Acc. Com.*

(1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76], the carrier unreasonably delayed payment of an award of temporary disability benefits, and a 10 percent penalty was added to that award. Thereafter, the carrier committed further acts of delay in paying temporary disability and the applicant sought an additional penalty. We approve the conclusion of the *Davison* court that 'The penalty is designed to secure timely payment of compensation, and if timely payment is not forthcoming *after a first penalty* a further penalty may run in order to cure the mischief.' " (*Gallamore, supra,* 23 Cal.3d at p. 823.)

Thus, contrary to the understanding of the Court of Appeal, *Gallamore* did not approve multiple penalties for termination of, or delays in the payment of, TTD. To the extent dictum in *Gallamore* might be relevant to that question, it addressed only the imposition of a second penalty for a separate and distinct act of delay in furnishing medical benefits and that act was one which occurred after a prior act of delay in furnishing the same benefit had led to an earlier initial penalty award.

*Rhiner* did not sanction more expansive awards of multiple penalties. The only issue in *Rhiner* was whether timely made pre-award benefit payments should be excluded from the "full amount" of the award ultimately made on which a section 5814 penalty is imposed. We held that because section 5814 expressly mandates imposition of the penalty on the "full amount of the order, decision or award" there was no authority for excluding pre-award payments. The penalty "must be assessed against the entire amount ultimately awarded to the employee for the class of compensation in which the payment was unreasonably delayed or refused by the employer, without deduction of payments made by the employer before the formal award." (*Rhiner, supra,* 4 Cal.4th at pp. 1227-1228, fn. omitted.)

Christian and the Court of Appeal rely on a footnote in *Rhiner* for their conclusion that the multiple penalties imposed in this case are authorized by section 5814. In that footnote we said: "The employer also argues that imposing the section 5814 penalty against the full amount of the award for the class of benefits unreasonably delayed encourages employers to delay future payments, because the penalty will be the same no matter how long or how often the employer delays payment. We disagree: successive delinquencies require the imposition of multiple penalties. (*Gallamore, supra,* 23 Cal.3d at pp. 823-824.)" (*Rhiner, supra,* 4 Cal.4th at p. 1226, fn. 7.) As we have shown, however, *Gallamore* did not decide whether or when section

5814 authorizes multiple penalties for each payment of TTD missed after an insurance carrier terminates that class of benefits.[9]

Like *Davison*, *Viegas* v. *Workers' Comp. Appeals Bd.* (1983) 148 Cal.App.3d 423 [196 Cal.Rptr. 10] illustrates a situation in which a legally significant event that unequivocally established the employer's liability for payment of benefits was the basis for an award of multiple penalties for separate and distinct acts of delay in payments of the same benefit. There the insurance carrier delayed temporary disability payments and did not pay for the worker's accrued medical expenses. The worker notified the carrier of his intent to seek multiple penalties and applied for penalties for the delay in payments due prior to and after the parties stipulated to the disability and an award was made. The WCJ awarded four separate penalties—for delay in payment of temporary disability prior to the stipulation, delay in paying at the proper rate after the stipulation, delay in reimbursing hospital costs and care, and delay in reimbursement of physical therapy costs incurred before and after the stipulation. The Board ordered a single penalty against the entire amount of temporary disability and a single penalty against medical treatment.

The Court of Appeal, relying on *Gallamore*, held that two 10 percent penalties on the total amount of temporary disability should have been awarded, as those delinquencies were separate and distinct acts of misconduct, and that there should have been two penalties for medical costs, as the delays in reimbursing hospitalization costs before the stipulation and physical therapy expenses before and after the date of the stipulation were separate and distinct acts of misconduct. This application of section 5814 recognized that in those circumstances the failure to pay benefits after stipulating to the obligation to do so was a separate and distinct act for each category of benefits. Again, the court did not award a penalty for each delayed payment, approving only a penalty for the delay before and a penalty for the delay after the stipulation.

This understanding of the authority for multiple penalties was also followed in *Jardine*, *supra*, 163 Cal.App.3d 1. There, as in the case before this court, after paying TTD for some time, the insurance carrier unilaterally decided that the worker was permanently partially disabled and reduced the payments. Only after a hearing date was set did the carrier restore full

---

[9]As we noted earlier, in *Gallamore* itself several pre-award permanent disability payments had not been paid. Nonetheless, a single penalty was authorized for those missed benefit payments. The same was true in *Kerley* v. *Workmen's Comp. App. Bd.*, *supra*, 4 Cal.3d 223, where the carrier discontinued payment of temporary disability and did not advance permanent disability benefits.

payments and begin payment of the withheld payments. A single penalty was imposed by the WCJ for what was found to be unreasonable conduct. On reconsideration the Board rejected the worker's claim that multiple penalties should be awarded. The Court of Appeal affirmed that ruling, distinguishing *Viegas* v. *Workers' Comp. Appeals Bd., supra,* 148 Cal.App.3d 423, on the ground that in *Jardine* the multiple failures to pay the proper amount of benefits arose out of the same unreasonable belief that the employee was not permanently totally disabled.

In the case before us, the Court of Appeal rejected the *Jardine* conclusion which it described as reasoning "that because each of many refused or delayed payments was based on the same reason, multiple, refused or delayed payments become one refused or delayed payment. Here, after each refused payment, Christian notified respondents of her objection to the refusal and intent to seek a separate penalty for each refused payment. Each of these notices brought the issue to respondents' attention, permitting them to reexamine their refusal."[10] The rule *Jardine* applied, correctly extrapolated from *Gallamore*, did not assume that only one payment had been refused or delayed, however. Nor did it create an exception for cases in which the worker notified the insurance carrier of the worker's belief that delay or refusal was unreasonable and warranted imposition of a penalty. Rather it recognized that a single, unreasonable act led to an improper reduction of benefits.

In *Gallamore* we sought a construction of section 5814 which would be fair to both the injured worker and the employer. (*Gallamore, supra,* 23 Cal.3d at p. 826.) Limiting penalties to a single penalty when TTD is delayed or refused because the employer or insurance carrier has determined, erroneously and unreasonably as it later turns out, that the worker is no longer eligible for that benefit, does so. Until the Board has made an award or another legally significant event occurs which unequivocally establishes the employer's or insurance carrier's liability, the employer or carrier may act under a good faith belief that its conduct is justified. Notice to the employer or carrier from the worker of intent to seek penalties and the employer's or insurance carrier's opportunity to reconsider its decision does not create a separate and distinct act for which imposition of penalties is authorized by section 5814 simply because the employer or carrier does not resume benefit payments on receipt of such notice. If a carrier or employer

---

[10]SCIF disputes the statement of the Court of Appeal that Christian notified it of her intent to seek penalties after each withheld payment. While the record does include copies of letters to SCIF from Christian's attorney stating that penalties were due for various acts counsel deemed to be misconduct, none appears to be directed to payments withheld after SCIF discontinued TTD.

believes that its conduct is justified, imposing multiple penalties on the theory that each notice gives the insurance carrier the occasion to reconsider the decision to terminate or change the amount of benefits payments would not fairly serve the deterrent purpose of section 5814. Instead, employers or carriers would be compelled, under the coercive force of the potential penalties, to continue payments to which they believe a worker is not entitled simply because multiple penalties might be assessed if the worker was able to give repeated notice of intent to seek penalties for conduct based on the same decision.

We recognized in *Gallamore* that in construing section 5814, the court must attempt to achieve a "fair balance between the right of the employee to prompt payment of compensation benefits, and the avoidance of imposition upon the employer or carrier of harsh and unreasonable penalties." (*Gallamore, supra*, 23 Cal.3d at p. 828; *Rhiner, supra*, 4 Cal.4th at p. 1230.)

The *Gallamore* construction and application of section 5814 we reaffirm here recognizes that more than one TTD benefit payment may be delayed or refused before an award is made and that the Board may conclude that the insurance carrier has acted unreasonably in the decision leading to the delays or refusal of workers' compensation benefits. The *Gallamore* rule also recognizes that when this occurs the injured worker may suffer great hardship. Like the Board in applying section 5814, however, in construing the section this court must attempt to balance the goal of ensuring benefits to the injured worker while avoiding unfairness to the employer or carrier that mistakenly believes its conduct is justified and reasonable. The single penalty limitation does this. If, after unreasonably delaying or refusing TTD benefits, the employer or carrier acknowledges legal responsibility for payment or is put on notice that the Board considers the conduct unreasonable, and then that misconduct is repeated, another penalty on the full amount of the award may be justified.

This rule does not eliminate either incentive for timely payment or recompense to the worker whose pre-award TTD benefits are delayed or refused. In section 4650, the Legislature now has provided an additional, but lesser, penalty for delays in payment of temporary or permanent indemnity. Section 4650 applies to all injuries occurring in 1990 and thereafter. Section 4650 imposes a penalty of 10 percent of the amount of the delayed payment without the necessity for application by the injured worker or a showing that the employer or carrier acted unreasonably.[11] By doing so without amending section 5814, the Legislature has implicitly concluded that this "strict liability" penalty normally is a sufficient deterrent to late payment. While amicus

[11]Section 4650 directs that the first payment of temporary disability be made not more than 14 days after knowledge of the injury and disability, unless liability is denied, and that the

curiae California Society of Industrial Medicine and Surgery, Inc., asserts that the penalty created by section 4650 is not legally significant and thus is insufficient to act as an incentive to prompt payment of benefits, the amount of a workers' compensation penalty is a legislative decision. The adequacy of that later enacted penalty is irrelevant to the proper construction of section 5814.[12]

Inasmuch as the termination of TTD payments here resulted from a single unreasonable act by the insurance carrier before an award had been made, and no legally significant event establishing the employer's or insurance carrier's liability followed that act, section 5814 authorizes only one penalty.

## III

### *Disposition*

The judgment of the Court of Appeal is reversed.

George, C. J., Werdegar, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent. The workers' compensation judge found as a fact that despite "numerous requests for payment of [temporary disability]" benefits, they were unreasonably withheld. The judge determined that the requests "constitute[d] notice . . . that applicant was requesting multiple penalties." There can be no dispute that under the Court of Appeal's rationale the

---

first payment of permanent disability be made within 14 days after the last payment of temporary disability indemnity. Subsequent payments are to be made every two weeks.

Subdivision (d) of section 4650 then provides: "If any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased by 10 percent and shall be paid, without application, to the employee, unless the employer continues the employee's wages under a salary continuation plan . . . . No increase shall apply to any payment due prior to or within 14 days after the date the claim form was submitted to the employer under Section 5401. No increase shall apply when, within the 14-day period . . . the employer is unable to determine whether temporary disability indemnity payments are owed and advises the employee . . . why payments cannot be made within the 14-day period, what additional information is required to make the decision whether temporary disability indemnity payments are owed, and when the employer expects to have the information required to make the decision."

[12]In addition, the Legislature has created sanctions for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay," and are applied to all adjudication applications filed on or after January 1, 1994. (§ 5813.) These penalties, which may be imposed on any party, include both an order that the offending party or attorney pay the costs incurred by another party as a result of such conduct and an additional sanction of up to $2,500 to be paid to the General Fund. While it is unnecessary to decide here if the section 5813 penalties apply only to actions related to an application for adjudication, the additional penalties provided in section 5813 should act as yet another deterrent to some of the deliberate delays feared by amicus curiae.

employee would be entitled to 11 separate penalties, each consisting of 10 percent of the total award for the class of unreasonably denied benefits.

The Court of Appeal's reasoning is impeccable both in logic and in fairness. I would adopt it herein.

Labor Code section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein." (All further section references are to the Labor Code.)

In *Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 827 [153 Cal.Rptr. 590, 591 P.2d 1242], we provided that "multiple penalties must be assessed [under section 5814] for successive delays so long as *separate and distinct acts* of misconduct are involved, and . . . the penalty is to be computed by assessing 10 percent of the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld." (Italics added.) As we explained more specifically, when "the circumstances disclose separate and distinct acts of delay or nonpayment, and prior notice was given of the applicant's intent to seek separate or additional penalties for such acts, then multiple penalties [under section 5814] are appropriate in a single penalty proceeding." (*Id.* at p. 824.) We reaffirmed this holding in 1993, when we reiterated the *Gallamore* rule that "successive delinquencies require the imposition of multiple penalties." (*Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1226, fn. 7 [18 Cal.Rptr.2d 129, 848 P.2d 244].)

It is clear that each failure to pay the employee herein her temporary disability indemnity constituted a distinct act of misconduct.

Section 4650 requires payment of temporary disability benefits within two weeks after knowledge of the injury and disability, and every two weeks thereafter as long as the employee's eligibility continues. Even if we did not construe the workers' compensation laws liberally in the employee's favor, as we must (§ 3202), including section 5814 (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]), it is obvious that the Legislature intended temporary disability payments to substitute for the employee's wages while disabled. (*Sea-Land Service, Inc.*

v. *Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 94 [58 Cal.Rptr.2d 190, 925 P.2d 1309] (dis. opn. of Mosk, J.); see § 4650, subds. (d) and (g) [referring to salary continuation plans].) The law recognizes that workers sometimes live from paycheck to paycheck and may not be able to sustain themselves for an extended period. "We may reasonably assume that the recipients of disability benefits, like others who receive weekly or monthly payments, live in anticipation of the next paycheck." (*County of Los Angeles v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 933, 940 [168 Cal.Rptr. 789].)

The majority conclude that fairness permits, and indeed requires, "[l]imiting penalties to a single penalty when [temporary total disability] is delayed or refused because the employer or insurance carrier has determined, erroneously and unreasonably as it later turns out, that the worker is no longer eligible for that benefit . . . ." (Maj. opn., *ante*, at p. 516.) Otherwise "employers or carriers would be compelled, under the coercive force of the potential penalties, to continue payments to which they believe a worker is not entitled simply because multiple penalties might be assessed if the worker was able to give repeated notice of intent to seek penalties for conduct based on the same decision." (*Id.* at p. 517.)

In so concluding, however, the majority pay insufficient heed to our recent recognition that "an unreasonable delay or refusal in payment that is monetarily of little consequence to an employer or carrier may be disastrous to an injured worker struggling to obtain medical treatment and to pay basic household expenses. [Citation.] Thus, there are competing policy considerations." (*Rhiner* v. *Workers' Comp. Appeals Bd.*, *supra*, 4 Cal.4th at p. 1226.) Today's decision unbalances the policy scale in the employer's or carrier's favor. Section 5814 imposes a penalty only for an *unreasonable* delay or refusal to pay benefits. To hypothesize that an employer or carrier will act in good faith and that the delay or refusal will only "later turn[] out" (maj. opn., *ante*, at p. 516) to be unreasonable, is to fail to acknowledge the strong incentive today's decision gives an employer or carrier to *be* stubbornly unreasonable. I cannot countenance providing such an incentive, and therefore dissent.

Kennard, J., concurred.